Peter A. Leeming SBN 119124
Law Offices of Peter A. Leeming
108 Locust Street, Suite 7
Santa Cruz, CA 95060

Telephone (831) 425-8000
paleeming@sbcglobal.net

Frank R. Ubhaus, SBN 46085
Berliner Cohen, LLP
Ten Almaden Boulevard, Eleventh Floor
San Jose, CA 95113

Telephone (408) 286-5800
Frank.ubhaus@berliner.com

James V. Kosnett SBN 71542
Kosnett Law Firm
11601 Wilshire Blvd, Ste. 500
Los Angeles, CA 90025

Telephone (310) 445-5900
jameskosnett@kosnetlaw.com

Attorneys for Plaintiff John Doe

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| JOHN DOE, | Civil Action No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant. | |

Plaintiff John Doe alleges as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff, a male student at the University of California at Santa Cruz (UCSC), is a respondent in a campus administrative investigation by the UCSC Title IX Office ("Title IX Office") into allegations that he sexually assaulted a female student ("Complainant"), at his off-campus residence on or about June 16, 2020.

2.      Title IX of the Education Amendments of 1972 prohibits sex discrimination in any educational program or activity receiving federal financial assistance.  On August 14, 2020, following an extensive period of review by the United States Department of Education ("DOE"), amended Title IX regulations went into effect. The amended regulations, titled "Nondiscrimination on the Basis of Sex in Educational Programs or Activities Receiving Federal Financial Assistance" were first published on May 19, 2020, and are found at 34 CFR part 106. The new regulations amended the procedural framework for investigating campus sexual assault allegations and granted new protections and enhanced due process for the accused student.   Enhanced procedural protections under the revised regulations include, for example, enhanced discovery rights as well as the right to cross examination of witnesses by each party's advisor and the right to ask the other party and any witnesses all relevant questions and follow-up questions at a hearing on the allegations. In contrast, the procedures currently being followed by Defendant in the pending administrative action against Plaintiff, do not provide significant discovery rights to the parties, and expressly prohibit an advisor from any active participation in the process.

3.      In this case, Defendant Regents of the University of California, have refused to apply the recent DOE amendments to the Title IX regulations, contending

that Plaintiff's case arose before August 14, 2020 and that the new federal Title IX regulations are not retroactive.  Instead, they are applying existing procedures that violate procedural due process.  If Plaintiff is forced to proceed under Defendant's existing procedures, he faces the possibility of expulsion and or a lengthy suspension without being afforded a hearing that complies with the requirements of the new federal Title IX regulations or his rights to due process.  This would irreparably harm his education and future career opportunities.

## THE PARTIES

4.     Plaintiff is currently a PhD candidate at UCSC in the field of Biomedical Sciences and Engineering.  UCSC's program in this area is a top-notch program with dozens of laboratories specializing in molecular biology, biochemistry, and bioinformatics.  Few other academic institutions in the world offer the specialized program that Plaintiff has elected to study at UCSC

5.     Plaintiff's field of study is highly specialized.   Plaintiff specifically enrolled at UCSC in order to avail himself of the unique opportunities offered by the University. By refusing to afford Plaintiff appropriate and fair process, the University is placing Plaintiff's educational and financial future at risk.

6.     The Regents of the University of California ("Regents"). is the governing body of the University of California, a public university system with over 280,000 students enrolled across ten campuses.  UCSC is a public university located in Santa Cruz, California and is part of the University of California statewide system of public universities, and is implementing the policy decisions and procedures established by the Regents.  UCSC is an institution that receives federal financial assistance and is subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C § 1681.

**JURISDICTION AND VENUE**

7.      This Court has federal question jurisdiction pursuant to Article III, §2 of the United States Constitution and 28 U.S.C § 1331 for claims arising under Title IX of the Education Amendments of 1972, 20 U.S.C § 1681.

8.      This Court has personal jurisdiction over Defendant on the grounds that the University is conducting business in the State of California.

9.      Venue for this action properly lies in this district pursuant to 28 U.S.C. § 193, because a substantial part of the events or omission giving rise to the claim occurred in the Northern District of California.

**I: STATEMENT OF FACTS**

10.      Complainant is a PhD student at UCSC.  Plaintiff and Complainant had a date on or about June 16, 2020.  Prior to the June 16, 2020 date, the couple agreed that they would not engage in vaginal intercourse during this date.  Plaintiff agreed to cook dinner for Complainant at his apartment.  Plaintiff asked Complainant to bring a bottle of wine.  Instead of bringing "a bottle of wine" to the dinner, Complainant on her own initiative decided to bring three bottles of wine to the meal. According to Complainant, over the course of the evening she and Plaintiff they drank 3 ½ bottles of wine.  (Ex. 1, p. 7) [1]

11.      At some point after Plaintiff and Complainant started dinner, the couple stopped eating the meal, went into Plaintiff's bedroom and engaged in consensual oral sex. After a period of time, the pair returned to the dinner table and resumed eating the meal and drinking more wine.  Shortly after the couple resumed their meal,

---

[1] Plaintiff has filed a Motion to Seal Exhibits 1-16, as they contain sensitive personal information of a sexual nature that is confidential pursuant to Title IX procedures.

they were joined at the table by Plaintiff's roommate, and the three adults talked about their studies while continuing to drink more wine.

12.     After about half an hour of chatting with Plaintiff's roommate and continuing to drink wine, Complainant suggested to Plaintiff that they return to his bedroom.  Plaintiff and Complainant returned to the bedroom and immediately began taking off their clothes, kissing and engaging in oral sex.   While they were kissing, the couple was also "grinding" on each other, meaning they were rubbing their pelvises together.  The couple also engaged in consensual digital penetration where Plaintiff was digitally penetrating Complainant's vagina while she was on her hands and knees on his bed facing away from him.  Eventually, the couple went to sleep. During the entire encounter, Plaintiff was unable to maintain a full erection due to his alcohol consumption.  (Ex. 1, p. 19.)  Complainant never blacked out and never lost any memory from the evening.  (Ex. 1, p. 6.)

13.     The following morning, Plaintiff advised Complainant that she should take "Plan B" birth control.  According to Complainant, Plaintiff told her that they had "sex" during their encounter the previous night and Plaintiff also told her that "I came in you."  Complainant did not believe that they had vaginal intercourse the previous evening, as she had engaged in vaginal intercourse on previous occasions, knew what it felt like and did not experience that sensation during her encounter with Plaintiff.  Complainant later told campus investigators that did not notice any secretions of semen when she went to the bathroom following her sexual encounter with Plaintiff.  Complainant also told campus investigators that she assumed that when Plaintiff said that they had "sex" the previous evening, he meant vaginal intercourse.  While Complainant never felt or saw Plaintiff's penis in her vagina, she

assumed that the "sex" occurred while the couple was engaging in consensual digital penetration and while she was facing away from Plaintiff.  (Ex. 1, P. 9.)

14.     Plaintiff told campus investigators that he did not engage in non-consensual vaginal intercourse with Complainant.  (Ex.1, P. 20.)  Plaintiff also told investigators that while the couple were kissing and "grinding", he thought he might have had a premature ejaculation and was concerned that Complainant could become pregnant from semen on her thigh near her vaginal canal.  It was due to this concern that Plaintiff recommended that Complainant take Plan B birth control the following morning.  (Ex. 1, p. 21.)

## II:  PROCEDURAL HISTORY

15.     On July 11, 2020, three weeks after the dinner date, Complainant reported to UCSC's campus sexual assault and harassment investigation office ("Title IX Office") that Plaintiff had engaged in nonconsensual vaginal intercourse with her on June 16, 2020, and that she would like to pursue a formal investigation.[2]

16.     On July 22, 2020, the Title IX Office notified Plaintiff by email that they were investigating an alleged violation of UC's Sexual Violence and Sexual Harassment Policy (SVSH policy), based on his encounter with Complainant on June 16, 2020.  (Exhibit 2, Notice of Investigation, to be filed under seal.) The notice informed Plaintiff that the procedures for investigating and resolving the allegation were contained in the 2019 edition of U.C.'s Policies Applying to Campus Activities, Organizations, and Students (PACAOS) Appendix-E ("2019 Appendix-E").  The

---

[2] Plaintiff requested a copy of the Title IX Office's July 11, 2020 intake report of their interview with Complainant, but has been informed that this report is not a part of his investigation file and therefore he is not entitled to a copy of it.  (See, Ex. 8 and 9.)

Title IX Office's July 22, 2020 notification email included a link to Appendix-E. (Exhibit 21, 2019 Appendix-E.) (See, Ex. 24, SVSH Policy.)

17.     Sana Amini, an investigator with UCSC's Title IX office, interviewed Complainant on August 3, 13 and October 1, 2020.  Ms. Amini interviewed Plaintiff on September 10 and October 8, 2020.  (Ex.1, p. 1.)

18.     Respondent did not have an advisor or an attorney during the investigation.

19.     Various witnesses were also interviewed in the course of the investigation.  Other than Complainant and Plaintiff, only Plaintiff's roommate had any direct interaction with the couple on the evening in question.  Five of witnesses interviewed were friends of Complainant, who had no personal knowledge of Plaintiff and Complainant's interactions on June 16, 2020, and for the most part simply repeated to Investigator Amini what Complainant had told them about her encounter with Plaintiff.  (Ex. 1, p. 2, and table contained therein.)

20.     During her investigation, Ms. Amini also reviewed text messages between Plaintiff and Complainant prior to and after their June 16, 2020 encounter, as well as some receipts from Complainant and responses by Complainant and Plaintiff after reviewing the evidence.  (Ex. 1, p. 3, and Appendix A thereto, Ex. 3.)

21.     Investigator Amini issued a report on her findings and preliminary determinations on December 1, 2020.   In this report , Investigator Amini concluded that, while Plaintiff stated that he did not penetrate Complainant's vagina with his penis, and that Complainant did not feel or see Plaintiff penetrate her vagina with his penis, Plaintiff's suggestion that Complainant take Plan B in morning following their June 16, 2020 encounter, supported a finding, by a preponderance of the evidence, that non-consensual vaginal intercourse had in fact occurred.  (Ex.1, P. 45-47.)

1   Investigator Amini further found Plaintiff's violation of the SVSH Policy on June 16,

2   2020 was aggravated, in that Plaintiff allegedly used force against Complainant to

3   accomplish the alleged penetration.  However, in another section, Ms. Amini's report

4   also states that she found that Plaintiff did *not* use force during the encounter.  (Ex. 1,

5   p. 48, 49.)  Investigator Amini issued her report on December 1, 2020.

6           22.    On December 1, 2020, the Title IX Office sent Plaintiff a Notice of

7   Outcome informing him of the result of the investigation.  (Ex. 4, filed under seal.)

8   The Notice informed Plaintiff that the investigation and report made the preliminary

9   determination that as a result of the June 16, 2020 encounter with Complainant, he

10  violated UCSC's SVSH Policy Section II.B.1.a, Sexual Assault – Penetration.  The

11  Notice also stated that the investigation determined that during his encounter with

12  Complainant, Plaintiff also violated UCSC's Code of Student Conduct sections

13  102.02, 102.08(c), and 102.26.[3] The Notice informed Plaintiff that the Student

14  Conduct Office would notify him of the proposed sanction based on the violations no

15  later than 5:00 P.M. on January 5, 2021, and assigned UCSC Student Conduct

16  Officer Julie Oberts to Plaintiff's matter. (Ex. 4, p. 2)

17          23.    On December 29, 2020 Plaintiff requested a Fact-Finding Hearing into

18  Complainant's allegations and the Title IX Office's preliminary determinations as

19  provided in the procedures listed in 2019 Appendix-E.  (Ex. 6, email requesting

20  hearing and response.)

21  _____

22  [3] §102.02 Other forms of dishonesty including but not limited to fabricating information,
    furnishing false information, or reporting a false emergency to the University,

23  §102.08(c) Conduct which constitutes, physical abuse including but not limited to:
    (c) other conduct that threatens the health or safety of any person;

24  §102.26 Violation of the University of California Policy on Sexual Violence and Sexual
    Harassment.

25

24.     On January 8, 2021, Ms. Oberts emailed Plaintiff a Notice of Proposed Sanction recommending his dismissal from the University, stayed, with a three-year suspension as a proposed sanction for the violations found in the Title IX Office's December 1, 2020 report.  (Ex.5, p. 1, and Ex. 24, UC SVSH Policy.)

25.     On January 29, 2021, Plaintiff's newly retained counsel Peter Leeming emailed a letter to Linda Skemer, the UCSC Hearing Officer assigned to preside over Plaintiff's Fact-Finding Hearing.  In this letter, Mr. Leeming requested clarification of the procedures applicable to the upcoming Fact-Finding Hearing.  (Ex. 7.)  The letter noted that the new DOE Title IX rules, 34 CFR part 106, had increased procedural protections for all parties at Fact Finding Hearings.   These new protections included the right to live cross examination of witnesses by counsel, and Mr. Leeming requested that those new provisions be applied at Plaintiff's Hearing. On February 3, 2021, Hearing Officer Skemer responded to Mr. Leeming's request by stating that the new DOE Title IX rules were not retroactive and that Plaintiff's Hearing would be governed by the existing procedures under 2019 Appendix-E. (See Ex. 8, Skemer response, and Ex. 23, 34 CFR part 106.45.)

26.     On February 4, 2021, Plaintiff's counsel sent another letter to Hearing Officer Skemer asserting that UCSC's position on applicable hearing procedures denied Plaintiff due process.  In this same letter, Plaintiff also requested additional discovery for the Hearing, including the Title IX Office's report of their July 11, 2020 Intake interview of Complainant, as well as Witness Interview Summaries used to prepare the investigation report.[4]  (Ex. 9.)  Plaintiff's contentions and requests for

---

[4]  Witness Interview Summaries are written reports contemporaneously created by the Title IX Office Investigator as they interview a witness.

additional discovery were denied by Hearing Coordinator Kyle Sasai on February 3, 2021. (Ex. 10.)

27.     Pursuant to the requirements of Appendix-E, Plaintiff submitted a Pre-Hearing Statement ("Statement") on March 2, 2021.  The Statement included Plaintiff's list of disputed issues to be addressed at the future Fact-Finding Hearing, Plaintiff's proposed hearing evidence, and a list of proposed witnesses.  One of Plaintiff's proposed witnesses was Dr. Felice L. Gersh, M.D., a forensic gynecologist, who had reviewed the December 1, 2020 Investigation Report and was prepared to provide expert witness testimony in support of Plaintiff's explanation of the events of June 16, 2020.  (See Ex. 11, Plaintiffs' Pre-Hearing Statement, and Exhibit 12, Curriculum Vitae of Dr. Felice L. Gersh, M.D.)

28.     Also pursuant to Appendix-E, a pre-hearing meeting between Plaintiff, his advisor and support person and Hearing Officer Skemer and her staff, was held on March 9, 2021.  During that meeting, the participants discussed Fact Finding Hearing procedural questions, Plaintiff's proposed evidence, and Plaintiff's proposed witnesses.  Plaintiff again requested that his advisors be allowed to take a more active role at the Fact-Finding Hearing, including questioning witnesses.

29.     During the March 9, 2021 meeting, Hearing Officer Skemer again denied Plaintiff's request for live cross examination and direct participation by counsel, citing the procedures outlined in Appendix-E.

30.     On March 19, 2021 Hearing Officer Skemer emailed Plaintiff and his advisors a "Notice of Scope" letter listing the issues, disputed facts, evidence, and witnesses Hearing Officer Skemer found relevant for the hearing. In the Notice of Scope letter, Hearing Office Skemer found that Dr. Gersh's testimony was not

1   relevant to any issue in the case and ruled that Dr. Gersh's testimony would not be

2   admitted at the Fact-Finding Hearing. (Ex. 13, Notice of Scope.)

3      31. The Notice of Scope letter also informed Plaintiff that he had five days

4   to provided additional information about the evidence, including witness testimony,

5   that Plaintiff would like to present at the Fact-Finding Hearing.  (Ex. 13, P. 2.)  On

6   March 31, 2021 Plaintiff submitted a declaration from Dr. Gersh outlining her

7   proposed testimony and requested that Hearing Officer Skemer reconsider her earlier

8   decision to exclude Dr. Gersh's testimony at the Fact-Finding Hearing. Plaintiff also

9   requested that Dr. Gersh's declaration be admitted into evidence at the Fact-Finding

10  Hearing.  (See, Ex.15, Declaration of Felice L. Gersh, M.D.)

11     32. On April 14, 2021, Hearing Officer Skemer sent Plaintiff an email

12  confirming her decision to exclude Dr. Gersh's testimony from the Fact-Finding

13  Hearing.  Hearing Officer Skemer also denied Plaintiff's request to admit Dr. Gersh's

14  Declaration into evidence at the Fact-Finding Hearing.  (Ex. 16.)

15     33. A Fact-Finding Hearing is now scheduled for June 2, 2021.

16     34. The procedures contained in Appendix-E and similar procedural

17  frameworks have been the subject of criticism and litigation on the grounds that they

18  violate due process, and have in fact been found to violate due process by various

19  state and federal courts.

20     35. In response to DOE's August 2020 Title IX Amendments, Defendant

21  amended Appendix-E on August 14, 2020.  The new Appendix-E, effective August

22  14, 2020, purportedly covers campus sexual assault and harassment investigations of

23  incidents that Defendant has decided are not covered by the new DOE Title IX

24  Amendments.  However, the new Appendix-E does not contain any of the enhanced

25  due process protections established in the new DOE Title IX Amendments.

36.     On August 14, 2020, Defendant also released new procedures for investigating campus conduct Defendant decided is covered under the new DOE Title IX rule Amendments, to wit: "University of California Interim PACAOS-Appendix-F: Sexual Violence and Sexual Harassment Student Investigation Framework for DOE-Covered Conduct". ("Appendix-F") (Exhibit 22.)  Appendix F purports to implement the enhanced procedural protections articulated in 34 CFR part 106 to alleged violations of Defendant's SVSH policy.  However, because Appendix-F provides greater due process protections than Appendix-E, "the University will apply the [Appendix-F] only when required, in response to DOE-Covered Conduct. It will follow its existing processes for all other reports." (Exhibit 24.)  Defendant has chosen to narrowly interpret the applicability of Appendix-F to conduct occurring after August 14, 2020, and occurring in a University program or activity.  Thus, even after the August 14, 2020 DOE Title IX Amendments, claims of sex-based conduct which occurred prior to August 14, 2020 or not occur in a University program or activity would still be investigated and adjudicated under the provisions of Appendix-E, and not subject to the greater due process protections outlined in Appendix-F.

37.     Defendant's approach as described above has established an arbitrary system, where the same conduct can, at Defendant's sole discretion, result in the application of two different disciplinary tracks, with different procedural rights and potentially different outcomes based on factors having nothing to do with individual culpability, including the date of the alleged occurrence.   The application of the Appendix-E procedures to Plaintiff's case, rather than those granting greater procedural protections under Appendix-F or as required by 34 CFR part 106, is a violation of Plaintiff's due process rights and therefore unconstitutional.

### III: FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – Fifth and Fourteenth Amendments

38.     Plaintiff incorporates the foregoing allegations as though fully set forth.

39.     42 U.S.C. § 1983 provides that: "Every person who, under color of [law] subjects . . . any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

40.     The Fifth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, guarantees due process of law.  The Fourteenth Amendment prohibits any state from depriving any person of life, liberty, or property without due process of law. The right to procedural due process includes the right to timely notice of the case against oneself and the right to be heard on the matter by a neutral arbiter. Every individual has a cognizable liberty and property interest in his or her professional reputation.

41.     Defendant Regents propose to apply the flawed and unconstitutional procedures outlined in Appendix-E, to the Fact-Finding Hearing currently scheduled in Plaintiff's case.  If Plaintiff's hearing is conducted under the provisions of Appendix-E, he will be unlawfully deprived of the protection he is entitled to under the newly amended DOE Title IX rules articulated in 34 CFR part 106 and as interpreted by established case law.

42.     Defendant Regents have also violated Plaintiff's rights to due process by unreasonably denying his reasonable requests for evidence in their custody and control, including the Witness Interview Summaries of all parties and witnesses interviewed as part of the Title IX Office's investigation into the June 16, 2020 event,

and Complainant's July 11, 2020 Initial Intake Report, where she gave the Title IX Office her initial statement about her encounter with Plaintiff on June 16, 2020. Defendant Regents have also denied Plaintiff's due process right to present relevant and exculpatory evidence at the upcoming Fact-Finding Hearing by refusing to allow the expert-witness testimony of Dr. Gersh or even her sworn declaration into evidence at the Hearing.

43.     Defendant Regents' proposed sanction for Plaintiff's alleged conduct in this case is dismissal from the University, to be stayed, with a three-year suspension. To impose such a serious sanction using a flawed and unfair process is clear deprivation of Plaintiff's liberty and property interests protected under the Fifth and Fourteenth Amendments.

44.     Defendant Regents' decision to withhold the full due process protections set forth in 34 CFR part 106 from Plaintiff's up-coming Fact-Finding Hearing violates Title IX of the Education Amendments of 1972 and the corresponding Title IX Rules promulgated by DOE, as well as the Due Process and Equal Protection provisions of the United States Constitution.

## IV: PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court enter judgment in his favor against Defendant, and award the following relief:

A:     Declare that the application of Appendix-E to Plaintiff's upcoming hearing violates Title IX of the Education Amendment Amendments of 1972 as amended by 34 CFR part 106;

B.      Declare that the application of Appendix-E to Plaintiff's upcoming hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment;

C.      Declare that Defendant's refusal to provide evidence in their custody and control to Plaintiff to allow him to fully prepare for the up-coming Fact-Finding Hearing, violates the Due Process Clause of the Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment;

D.      Declare that Defendant's refusal to allow Plaintiff to introduce relevant and exculpatory evidence, in the form of Dr. Gersh's expert-witness testimony and/or her sworn declaration regarding her review of the evidence and opinions thereof, violates the Due Process Clause of the Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment;

E.      Permanently enjoin Defendant and its officers, agents, servants, employees and attorneys, and those persons in active concert with them from applying Appendix-E policy to Plaintiff's pending matter;

F.      Order Defendant to allow Plaintiff to offer into evidence at his Fact Finding Hearing the expert-witness testimony of Dr. Felice L. Gersh as well as her sworn declaration regarding her review of the evidence in this case and opinions thereof;

G.      Award Plaintiff his reasonable costs and attorneys' fees in this action; and

H.      Grant Plaintiff such other relief as this Court may deem just and proper.

///

///

Respectfully submitted

Dated: May 4, 2021                    By: _____s_____
                                          Peter A. Leeming
                                          Attorneys for John Doe

Dated: May 4, 2021                    By: _____s_____
                                          Frank R. Ubhaus
                                          Attorneys for John Doe

Dated: May 4, 2021                    By: _____s_____
                                          James V. Kosnett
                                          Attorneys for John Doe